# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN DEVAUX** | : | |
| | : | Case No. 1:23-cv-101 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **JENNIFER A. SAVAGE**, as co-trustee of the | : | |
| Albert and Josephine Covelli Grandchildren's | : | |
| Trust fbo Lauren Ricci dated December 30, | : | |
| 1987 and/or the 2014 Irrevocable Trust | : | |
| Agreement Creating Vested Trusts for the | : | |
| Ricci Grandchildren of Albert M. and | : | |
| Josephine Covelli Trust, creating The Albert | : | |
| and Josephine Covelli Grandchildren's Trust | : | **COMPLAINT FOR BREACH OF** |
| for the benefit of Lauren Ricci, | : | **TRUST, REMOVAL OF CO-** |
| | : | **TRUSTEES, AND DECLARATORY** |
| and | : | **JUDGMENT** |
| | : | |
| **ANNETTE C. FORD**, as co-trustee of the | : | |
| Albert and Josephine Covelli Grandchildren's | : | |
| Trust fbo Lauren Ricci dated December 30, | : | |
| 1987 and/or the 2014 Irrevocable Trust | : | |
| Agreement Creating Vested Trusts for the | : | |
| Ricci Grandchildren of Albert M. and | : | |
| Josephine Covelli Trust, creating The Albert | : | |
| and Josephine Covelli Grandchildren's Trust | : | |
| for the benefit of Lauren Ricci, | : | |
| | : | |
| Defendants. | : | |

Plaintiff Lauren Devaux, in her capacity as beneficiary of the Albert and Josephine Covelli

Grandchildren's Trust fbo Lauren Ricci dated December 30, 1987 ("Original Trust"), and the 2014

Irrevocable Trust Agreement Creating Vested Trusts for the Ricci Grandchildren of Albert M. and

Josephine Covelli Trust, creating The Albert and Josephine Covelli Grandchildren's Trust for the

benefit of Lauren Ricci ("2014 Decanted Trust"), hereby makes the following Complaint against

1

Defendants Jennifer A. Savage and Annette C. Ford, in their capacities as co-trustees of the 2014 Decanted Trust.

## **NATURE OF THE ACTION**

1.       This case is about a vengeful mother who is misusing her power as a trustee in order to punish and—in her own words—inflict "pain" on her adult daughter, the beneficiary of the 2014 Decanted Trust, for her choice of a romantic partner of which the mother disapproves.

2.       Annette C. Ford is the mother of Lauren Devaux and one of two trustees of the 2014 Decanted Trust. Jennifer A. Savage is an attorney who has represented Ms. Ford, may have been the drafter of the 2014 Decanted Trust, and is currently serving as the other trustee of the 2014 Decanted Trust.

3.       After an uninterrupted pattern of weekly distributions to Ms. Devaux for over 15 years, the Defendants ceased distributions and purported to make a determination that Ms. Devaux was "unable to attend to [her] financial affairs" due to incapacity. This revelation occurred just two days after Ms. Ford wrote to her daughter, "I am taking you out of my inheritance" and threatened, "Just wait… The only thing that motivates you is money…so that's where you will be hit the hardest…what goes around comes around. Have a nice life and I hope you burn in hell."

4.       This email was just one instance of a pattern of irate and threatening outbursts from Ms. Ford that have resulted from Ms. Devaux's decision to separate from her husband and pursue a relationship with another man, with whom she now lives—a decision of which Ms. Ford does not approve. This rage and concomitant desire to harm Ms. Devaux, both emotionally and financially, have since motivated the Defendants to utilize their positions as trustees to pursue a coordinated and calculated effort to punish Ms. Devaux by stripping her of the longstanding financial source upon which she depends to support herself and her six children. In addition to

abruptly ceasing weekly distributions to Ms. Devaux, the Defendants refused to distribute any trust funds to Ms. Devaux related to her new home in favor of making distributions for payments on her soon-to-be former husband's home where their children live half of the time.

5. Scores of communications from the Defendants to Ms. Devaux—including emails and text messages from Ms. Ford to Ms. Devaux and her minor children—unabashedly reveal that the Defendants' actions were motivated by anger and animosity toward Ms. Devaux, disapproval of her romantic choices, and a desire to punish and to harm her for not obeying the instructions of her mother in this regard.

6. The Defendants have acted in bad faith, dishonestly, with improper motive, and with a conflict of interest, constituting a breach of trust and warranting their removal. Ms. Devaux's informal efforts to address this matter with the Defendants have failed. As a result, Ms. Devaux has been forced to bring this action to protect and enforce her rights as beneficiary.

## PARTIES

7. Plaintiff Lauren Devaux (formerly Lauren Ricci) is an individual and resident of Massachusetts.

8. Defendant Jennifer A. Savage is an individual and resident of Ohio, domiciled in Cuyahoga County, from where she administers the 2014 Decanted Trust as a co-trustee.

9. Defendant Annette C. Ford (formerly Annette Covelli Ricci) is an individual and resident of Florida, the mother of Ms. Devaux, and a co-trustee of the 2014 Decanted Trust.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000 and there is complete

diversity of citizenship between Ms. Devaux and the Defendants. The financial harm Ms. Devaux has suffered as a result of Defendants' bad acts exceeds $200,000.

11.     Venue is proper in this judicial district because a substantial part of the events giving rise to the claim occurred in this judicial district. The 2014 Decanted Trust is administered in Cuyahoga County, Ohio. The 2014 Decanted Trust account address is located in Warren, Ohio.

## FACTUAL BACKGROUND

### *The Original Trust*

12.     Ms. Devaux's grandparents, Albert and Josephine Covelli, created the Original Trust in 1987. It was an irrevocable trust of which Ms. Devaux was the beneficiary and Sam Covelli (Ms. Devaux's uncle) and Ms. Ford were co-trustees. The Original Trust is attached hereto as **Exhibit A**.

13.     By its terms, the Original Trust was to terminate when Ms. Devaux reached the age of 35, at which time the trustee would have been required to distribute **all** of the trust assets to Ms. Devaux outright and free of trust.

14.     Ms. Devaux is currently 40 years old.

### *The 2014 Decanted Trust*

15.     Albert Covelli (Ms. Devaux's grandfather) died in 2014.

16.     Shortly thereafter, the co-trustees of the Original Trust purported to use new Ohio law, Ohio Rev. Code Ann. § 5808.18 ("Decanting Statute") and distribute or "decant" the assets of the Original Trust into a new trust known as the 2014 Decanted Trust with very different terms. The 2014 Decanted Trust is attached hereto as **Exhibit B**.

4

17.     The terms of the 2014 Decanted Trust eliminated Ms. Devaux's entitlement to outright distribution of the trust assets when she reached the age of 35, and provided instead that it would terminate only upon Ms. Devaux's death.

18.     Ms. Devaux was 32 years old at the time the 2014 Decanted Trust was purportedly created.

19.     The 2014 Decanted Trust gives Ms. Devaux the power to leave the remainder of the Trust assets to anyone she chooses when she dies, but purports to strip her of all rights concerning distributions from the trust for the remainder of her lifetime.

20.     As compared to the Original Trust, the 2014 Decanted Trust also purports to reduce the trustee's standard of care applicable to the actions of the co-trustees and increase the extent to which the trustee is entitled to exoneration and indemnification from the assets of the 2014 Decanted Trust.

21.     For example, the 2014 Decanted Trust provides that "[i]f a Trustee fails to provide any information or make any disclosure that is required by law, or to do so in a timely manner, the failure shall not alone constitute a breach of trust or other cause for (A) any damages . . . or other award, detriment, injunction, or other sanction against the Trustee, (B) removal or replacement of the Trustee . . ." [1] The Original Trust contains no such provision.

22.     Upon information and belief, Defendant Jennifer Savage prepared the 2014 Decanted Trust documents in her capacity as an attorney for Ms. Ford.

23.     On or about July 20, 2016, Ms. Savage was appointed by Ms. Ford to become a co-trustee of the 2014 Decanted Trust.

---

[1] In addition to its insertion in violation of the Decanting Statute's prohibition on reducing the standard of care and increasing trustee exoneration and indemnification, this provision is unenforceable on its face under Ohio Rev. Code Ann. § 5801.04(B), which provides that the mandatory requirements of the Ohio Trust Code concerning the duties of trustees to inform and report to their beneficiaries prevail over the terms of the Trust.

### *The Longstanding Pattern of Distributions to Ms. Devaux*

24.     For as long as Ms. Devaux can remember, she had met regularly with an advisor of the Covelli family to discuss her finances, needs, and to create a budget with regard to trust distributions. Weekly distributions to Ms. Devaux from the Original Trust and the 2014 Decanted Trust were a result of the discussions and budget she and the advisor prepared together.

25.     For over 15 years—her entire adult life—Ms. Devaux has received weekly distributions, or in some cases reimbursements of all expenses, from the Original Trust, and then from the 2014 Decanted Trust, totaling approximately $350,000 to $400,000 per year.

26.     In addition to the weekly distributions that Ms. Devaux received without fail, the trustees of the Original Trust or the 2014 Decanted Trust have also assisted Ms. Devaux in purchasing and maintaining her homes.

### *Ms. Devaux's Separation from her Husband and Purchase of a New Home*

27.     Ms. Devaux has six children ranging in ages from 5 to 14.

28.     In 2020, Ms. Devaux and her husband, Chris Devaux ("Chris"),[2] sold their five-bedroom house in Dover, Massachusetts in preparation for a move to Atlanta, Georgia.

29.     The house was owned by the 2014 Decanted Trust. Tax records provided by the Defendants to Ms. Devaux show that the 2014 Decanted Trust had a capital gain of approximately $2,150,000 as a result of the sale of the house.

30.     Ms. Devaux, Chris, and their children moved into an apartment with the intention of living there temporarily before moving to Atlanta.

---

[2] Lauren and Chris Devaux are currently finalizing their divorce through an informal mediation process.

31.     Shortly thereafter, because of the COVID-19 pandemic and other economic considerations, Ms. Devaux and Chris decided to remain in Massachusetts and moved into a townhouse in Needham, Massachusetts with their children.

32.     Ms. Devaux and Chris's relationship had deteriorated. Ms. Devaux began a relationship with another man and Ms. Devaux and Chris decided to separate. In an effort to continue to co-parent and minimize disruption on their children, Ms. Devaux continued to live with Chris and their children in the townhouse while she searched for a new home to accommodate her family.

33.     In or about October 2021, Ms. Devaux and her new partner entered into a contract to purchase a six-bedroom house in Needham, Massachusetts.

34.     Ms. Devaux thereafter requested that the Defendants make a distribution for the down payment on her new house. Upon learning that Ms. Devaux intended to purchase and live in the home with her new partner, the Defendants refused to make the distribution.

35.     In or about November 2021, Ms. Devaux and her new partner closed on the purchase of their new house.  Ms. Devaux moved out of the townhouse with Chris and moved into her new home with her children and her new partner and his children.

36.     Ms. Devaux and Chris co-parent their three children. Both have equal custody.  Ms. Devaux's three older children (from a marriage prior to her marriage with Chris) live primarily with Ms. Devaux.

37.     Despite the deterioration of Ms. Devaux's marriage to Chris for reasons known to them both, Ms. Ford repeatedly pressured Ms. Devaux to reconcile with Chris. She repeatedly told Ms. Devaux and others that she disapproved of the separation and of Ms. Devaux's new partner, whom she frequently refers to as "the devil."

### *The Defendants' Malicious Effort to Punish and Inflict Pain*

38.     When Ms. Devaux did not succumb to Ms. Ford's pressure to leave her new partner and reconcile with Chris, Ms. Ford initiated a coordinated and calculated campaign to punish and to harm Ms. Devaux, both emotionally and financially, utilizing her position as a trustee and her control over Ms. Devaux's distributions from the 2014 Decanted Trust upon which she relies to live and provide for her children.

39.     On or about May 14, 2022, Ms. Ford traveled to visit Ms. Devaux and her children. Upon arriving and learning that Ms. Devaux had purchased and moved into the new home with her new partner, Ms. Ford became irate. Ms. Ford left and sent a text message the same day to Ms. Devaux and stated, "You are dead to me. I hope [C]hris takes you to the cleaners. This whole family is on his side." She threatened, "Neither one of you better mess with me. I am the best thing and [C]hris that ever happened to either one of you."

40.     On Tuesday, May 17, 2022, Ms. Ford emailed Ms. Devaux that she would speak with "Jennifer"—*i.e.*, Ms. Savage—among others, on Thursday, May 19.  Ms. Ford stated, "I am taking you out of my inheritance." She threatened, "Just wait… The only thing that motivates you is money…so that's where you will be hit the hardest…what goes around comes around. Have a nice life and I hope you burn in hell [. . .]." She continued, "You have caused more pain in 2 years upon so many people and now it's your turn."

41.     Two days later, on Thursday, May 19, 2022, the same day that Ms. Ford spoke with Ms. Savage, Ms. Savage wrote to Ms. Devaux in her capacity as a trustee and informed Ms. Devaux that Ms. Savage would "cease all weekly distributions," citing that the Defendants had purportedly determined that Ms. Devaux is "unable to attend to [her] financial affairs" pursuant to paragraph 3(c) of the 2014 Decanted Trust, which provides for incapacity.

42.     Ms. Savage further stated that the Defendants "decided to continue direct payments of rent" for the townhouse in which Chris resides with their children when they are not with Ms. Devaux, citing authority under paragraph 3(a) to make distributions to other individuals in satisfaction of Ms. Devaux's legal obligations.

43.     On May 24, 2022, Ms. Savage followed up by letter. Ms. Savage stated, "While I appreciate that this may be an abrupt change for you, as Trustees, we have determined that this immediate change is warranted and necessary under your present circumstances." Notably, Ms. Savage did not identify the supposed "circumstances" to which she referred nor explain the rationale for the Defendants' conclusion that those circumstances necessitated a cessation of distributions to Ms. Devaux.

44.     Ms. Savage continued, "[t]o the extent that you have reasonable additional expenses for the care of your minor children that are not covered by child support payments and that you are unable to cover, you may submit your paid receipts along with detailed documentation supporting that the expense was a necessary cost solely to meet the needs of your minor children, to the Trust for consideration for reimbursement. Mortgage loan payments will not be reimbursed."

45.     On July 14, 2022, however, Ms. Savage instructed Ms. Devaux to "stop sending any more receipts or requests at this time" to the Defendants.

46.     The Defendants have since regularly denied reimbursements, citing formalities of their arbitrary reimbursement guidelines, including, for example, the comingling of Ms. Devaux and her children's groceries and restaurant food and items deemed "unnecessary," such as craft supplies for her children.

47.     From May 2022, when the Defendants abruptly ceased weekly distributions, until December 2022, Ms. Devaux received a total of $18,785.31 in reimbursement distributions. Had

the Defendants not ceased the longstanding pattern of weekly distributions, Ms. Devaux would have received during this time period over $210,000.

### COUNT I – BREACH OF TRUST

***(Ohio Rev. Code Ann. § 5810.01; Ohio Rev. Code Ann. § 5808.01 et seq.)***

48.     Ms. Devaux incorporates the foregoing allegations as if fully rewritten herein.

49.     Ohio Rev. Code Ann. § 5810.01 provides that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."

50.     Ohio Rev. Code Ann. § 5808.01 imposes on a trustee a duty of good faith and requires a trustee to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with" the Ohio Revised Code.

51.     Ohio Rev. Code Ann. § 5808.02 imposes on a trustee a duty of loyalty to the beneficiary and requires a trustee to "administer the trust solely in the interests of the beneficiaries."

52.     Ohio Rev. Code Ann. § 5808.04 imposes on a trustee a duty to act as a prudent person and requires a trustee to "exercise reasonable care, skill, and caution."

53.     In exercising these duties, Ohio law prohibits a trustee from administering a trust in bad faith, dishonestly, with improper motive, or with a conflict of interest.

54.     Under Ohio law, the foregoing applies to all trustees, regardless of whether the trust provides for absolute discretion with regard to distributions.

55.     The decisions of the Defendants to refuse to distribute trust funds to Ms. Devaux for her home in favor of making distributions for Chris's home and to abruptly cease the longstanding pattern of weekly distributions to Ms. Devaux were made in bad faith, dishonestly,

and with improper motive—specifically, to punish, harm, and inflict pain on Ms. Devaux in reprisal for leaving Chris and moving in with her new partner.

56.     Ms. Ford's May 17, 2022 communication (which is only one of *many* similarly hostile and threatening communications) demonstrates that her actions, in her capacity as a trustee, in ceasing weekly distributions was a personal act of punishment, intended to harm Ms. Devaux both emotionally and financially.

57.     Together, Ms. Ford's May 17 email and Ms. Savage's May 19 letter further demonstrate that Ms. Savage, in her capacity as a trustee, acted to carry out Ms. Ford's bad faith and improper motives, citing that the Defendants had determined that Ms. Devaux is "unable to attend to [her] financial affairs" as a result of incapacity. The communications from the Defendants to Ms. Devaux demonstrate that this rationale was pretextual and the determination was made dishonestly and in bad faith.

58.     Further, the communications from the Defendants to Ms. Devaux—particularly the message from Ms. Ford hoping that Chris "takes [her] to the cleaners"—demonstrate that the Defendants are not, in fact, concerned with protecting or benefiting Ms. Devaux amidst her divorce, but demonstrate their bad faith, dishonesty, and improper motives.

59.     Ms. Ford and Ms. Savage have violated their duties as co-trustees, constituting a serious breach of trust.

60.     As a result, Ms. Devaux has suffered, and continues to suffer, significant financial damages.

## COUNT II – REMOVAL OF CO-TRUSTEES

### (*Ohio Rev. Code Ann. § 5807.06*)

61.     Ms. Devaux incorporates the foregoing allegations as if fully rewritten herein.

62.     Ohio Rev. Code Ann. § 5807.06 provides for the removal of a trustee where "[t]he trustee has committed a serious breach of trust" or "[b]ecause of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively."

63.     Ms. Ford and Ms. Savage have committed a serious breach of trust in their capacity as co-trustees and have persistently failed to administer the trust effectively and in good faith sufficient to warrant removal.

64.     In addition, Ms. Ford's May 17 communication, including her financial threats and "hope" that Ms. Devaux will "burn in hell," demonstrates a personal conflict of interest and hostility toward Ms. Devaux sufficient to warrant her removal as a trustee.

## COUNT III – DECLARATORY JUDGMENT

### (*Ohio Rev. Code Ann. § 2721.05*)

65.     Ms. Devaux incorporates the foregoing allegations as if fully rewritten herein.

66.     Ohio Rev. Code Ann. § 2721.05 allows "[a]ny person interested … in the administration of a trust" to obtain a declaration of rights to direct a trustee to do or refrain from doing any particular act in its fiduciary capacity, and to determine any question arising in the administration of the trust, including questions of construction.

67.     Ohio's Decanting Statute permits the trustee of a trust who has "absolute power under the terms of the first trust to make distributions of principal to one or more of the current beneficiaries, that trustee may exercise that power by distributing all or any part of the principal subject to the power . . . to the trustee of another trust. . . The second trust may be a trust under the trust instrument for the first trust or under a new governing instrument . . ."  Ohio Rev. Code Ann. § 5808.18.

68.    The co-trustees of the Original Trust had absolute power to make distributions of principal to Ms. Devaux in 2014.

69.    The Ohio Decanting Statute provides, however, that "the exercise of the power to make distributions to a second trust . . . is subject to the following additional limitations . . . the distribution to the trustee of the second trust **shall not** result in . . . a reduction in the standard of care applicable to the actions of the trustee of the first trust or the second trust or an exoneration of the trustee of the first trust or the second trust from liability for actions taken in bad faith or with willful disregard of the duties of either trustee, including the extent to which the trustee is entitled to indemnification from the trust, as provided in the terms of the first trust and under any law of this state." Ohio Rev. Code Ann. § 5808.18(C)(8)(b) (emphasis added).

70.    The 2014 Decanted Trust purports to reduce the standard of care applicable to the actions of the trustee and increases the extent to which the trustee is entitled to exoneration and indemnification from the assets of the 2014 Decanted trust in violation of Ohio Rev. Code Ann. § 5808.18(C)(8)(b).

71.    In addition, Ohio Rev. Code Ann. § 5801.04 does not permit an Ohio trust to attempt to override a trustee's statutory duty to act in good faith. Ohio Rev. Code Ann. § 5810.08 does not permit an Ohio trust to relieve a trustee from liability for a breach of trust committed in bad faith or with reckless indifference to the interests of the beneficiary.

72.    The Defendants contend that the assets of the Original Trust were properly decanted to the 2014 Decanted Trust, and to the extent "that a decant improperly changed the applicable standard of care, or the level of exoneration and indemnification for the trustee, the decant itself remains valid."

73.     A justiciable controversy exists as to the validity of the 2014 Decanted Trust in light of the violation of the mandatory requirements of the Ohio's Decanting Statute in its creation.

74.     Ms. Devaux requests a declaration from this Court that the decanting of the Original Trust to the 2014 Decanted Trust was improper and that the 2014 Decanted Trust is, therefore, invalid, and the terms of the Original Trust should be enforced and all assets distributed immediately to Ms. Devaux outright and free of trust.

WHEREFORE, Ms. Devaux demands judgment against Defendants Jennifer Savage and Annette Ford as follows:

A.     For removal of Jennifer Savage and Annette Ford as co-trustees and the appointment of an independent, corporate trustee;

B.     For a declaration that the decanting of the 2014 Decanted Trust violated Ohio law and that the 2014 Decanted Trust is, therefore, invalid;

C.     For a declaration that Ms. Devaux is entitled to all assets of the Original Trust outright and free of trust;

D.     For attorney fees, costs, and expenses incurred pursuant to Ohio Rev. Code Ann. § 5810.04; and

E.     For any and all other damages, including compensatory and punitive, to which Ms. Devaux is entitled, in amounts to be determined at trial;

F.     For such other relief as the Court deems fair and equitable.

DATED this 18th day of January, 2023.

VORYS, SATER, SEYMOUR AND PEASE, LLP

s/ *Rajeev K. Adlakha*
Rajeev K. Adlakha (0087096)
200 Public Square, Suite 1400
Cleveland, OH 44114
Phone/Facsimile: (216) 479-6175
rkadlakha@vorys.com

Elizabeth E.W. Weinewuth (0078113)
Erin D. French (0090813)
301 East Fourth Street
Great American Tower, Suite 3500
Cincinnati, OH 45202
Phone/Facsimile: (513) 723-4486
                        (513) 723-4022
eewweinewuth@vorys.com
edfrench@vorys.com

*Attorneys for Lauren Devaux*